## JAMES A. FETSCH v. MIKE HOLM.
## SARALOU MATHER, INTERVENER.[1,2]

March 7, 1952.

No. 35,799.

---

[1]Reported in 52 N. W. (2d) 113.

[2]In the above entitled matter, it is ordered that the motion for an order summarily discharging the order to show cause herein and dismissing the petition, be and the same is hereby denied.

It is further ordered that the respondent, Mike Holm, as secretary of state of the state of Minnesota, desist from placing upon the ballots for the Republican party to be used in the presidential primary election to be held within the state of Minnesota on the third Tuesday in March 1952 the name of Dwight D. Eisenhower as a candidate of the Republican party for the nomination for president and the names of proposed delegates to the next national convention of the Republican party. A formal opinion will follow.

Dated February 28, 1952.

BY THE COURT

CHARLES LORING
Chief Justice

*William C. Green, Leavitt R. Barker, Sidney W. Goff, Silver, Green & Goff,* and *Dorsey, Colman, Barker, Scott & Barber,* for petitioner.

*J. A. A. Burnquist,* Attorney General, and *George B. Sjoselius,* Deputy Attorney General, for respondent.

*David W. Raudenbush* and *Morgan, Headley, Raudenbush & Morgan,* for intervener.

MAGNEY, JUSTICE.

M. S. A. 202.45, subd. 1, provides:

"Beginning February 1 of said election year and not later than the following February 15, there may be placed on the ballot, by

petition filed with the secretary of state, the name of any person as a candidate for the nomination for the presidency of the United States. The said petition shall be signed by at least 100 voters from each congressional district in the state."

Subd. 2 sets out that the petition may consist of one or more writings and specifies the information that it must contain.

In purported compliance with the above section and on February 1, 1952, there was filed in the office of respondent, Mike Holm, as secretary of state of the state of Minnesota, a petition consisting of several writings asking that respondent as secretary of state enter the name of Dwight D. Eisenhower on the ballot of the presidential primary of the Republican party for the March 18, 1952, Minnesota presidential primary.

On February 26, 1952, petitioner herein, James A. Fetsch, presented to this court a petition setting out that an error was about to occur in the placing of names on the official primary election ballot for the presidential primary election to be held on March 18, 1952, in this: That respondent as secretary of state of the state of Minnesota was about to prepare ballots for use in the said presidential primary election and cause to be printed ballots for the Republican party to be used in each congressional district of the state of Minnesota, and that he was about to include on said ballots the name of Dwight D. Eisenhower as a candidate for the nomination of the Republican party for president and the names of certain named persons as proposed delegates at large and from each congressional district, said delegates being pledged to the candidacy of Dwight D. Eisenhower for the nomination of the Republican party to the presidency of the United States.

Petitioner contends that the nominating petition fails to comply with the provisions of § 202.45 in several respects, and he requests that this court, under the provisions of § 202.08, order and direct respondent forthwith to cease, desist, and refrain from placing upon the ballots for the Republican party to be used in the forthcoming presidential primary the name of Dwight D. Eisenhower as a candidate for the Republican nomination for president of the

United States and the names of proposed delegates to the next national convention of the Republican party.

Upon motion of petitioner, this court issued an order directing respondent as secretary of state of the state of Minnesota forthwith to correct the errors which it is alleged in the affidavit of petitioner are about to occur, and to desist from placing upon the ballots for the Republican party the names above mentioned or referred to, or show cause to this court why he should not do so. Saralou Mather, in behalf of herself and all other Eisenhower delegates, was permitted to intervene.

Intervener made a motion to have the order to show cause summarily discharged and the petition dismissed. In her return and answer, she specifically denied that the nominating petition addressed to respondent as secretary of state was in any material respect defective, or that any material error has occurred or is about to occur in the preparation or printing of the ballots for use in the election for which the slate and petition were filed.

Respondent in his return to the order to show cause admits that the questioned petition was filed in his office on February 1, 1952; that the last day for the withdrawal of nominations was February 25, 1952; that immediately after the time for withdrawal had expired he delivered to the printer the copy of the names of the three candidates who had filed for the Republican nomination and the list of proposed delegates; that he is required under the law to transmit the printed ballots and other election material to each county auditor at least 15 days before the election, which in this case would be March 3, 1952; and that he has been advised by the printer that it will require from seven to ten days from the time the final proof is approved to print, pad, and deliver the required number of ballots to respondent. He prayed the court for such order as might be proper in the premises.

■ Petitioner claims that the nominating petition here involved fails to comply with the provision of § 202.45 in several respects and is therefore fatally defective. Some of these claimed defects appear on the face of the petition and are patent, and others are

latent, requiring oral testimony for proof. We shall confine our consideration to only one defect which appears on the face of the petition. Since in our opinion this defect is fatal to the validity of the petition, a discussion of the other claimed defects will add nothing to the resulting decision, and no attention will be given to them.

Section 202.45, subd. 1, provides in part that the petition for nomination for the presidency of the United States shall be signed by at least 100 voters from each congressional district of the state. The petition from the eighth congressional district contains 120 signatures. Below these signatures we find the following purported certificate:

"STATE OF MINNESOTA)
COUNTY OF ST. LOUIS) SS

"I, Edward W. Peterson, a notary public, for and in St. Louis County, Minnesota, do hereby certify that each and all of the above individuals are qualified electors for and in the EIGHTH CONGRESSIONAL DISTRICT of the State of Minnesota.

"Edward W. Peterson [Signed]

"EDWARD W. PETERSON [Typed]
Notary Public St. Louis, Minnesota
"My Commission Expires February 5, 1953."

Section 202.45, subd. 3, provides:

"After the signature of each signer there shall be written his post office address and the congressional district in which he resides. *Following the facts required to be stated in each petition signed by the voter shall be written or printed an oath in the following form:*

*" 'I solemnly swear (or affirm) that I know the contents and purpose of this petition and signed same of my own free will.' "*
(Italics supplied.)

This requirement is mandatory. The purpose of the oath is plain. It should require no argument to demonstrate that the petition containing names of signers from the eighth congressional dis-

trict is fatally defective, and this defect vitiates the whole nominating petition.

■ Intervener contends that, insofar as the petition raises issues determinable from an inspection of the nominating petition itself, relief should be denied because of laches. The nominating petition in question was filed on February 1, 1952. The last day for filing was February 15, and the last day for withdrawal of candidates February 25. Intervener states that at all times since the 1st day of February the nominating petition was open to public inspection and would have disclosed to petitioner as soon as he chose to examine it the alleged defects of which he now complains. She also argues that if such defects had been pointed out any time during the first week in February it would have been feasible for intervener and the other proposed delegates on the Eisenhower slate to circulate new petitions, if necessary, and to file the same before the filings closed on February 15, and that by refraining from raising any question as to the formal sufficiency of the petition until February 18 petitioner has deprived intervener and the other proposed delegates of all opportunity to cure such formal deficiencies as he thinks exist.

In considering laches, we have held that the practical question in each case is whether there has been such an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant the relief prayed for. Elsen v. State Farmers Mut. Ins. Co. 219 Minn. 315, 17 N. W. (2d) 652, and cases therein cited.

On February 18, 1952, petitioner in a letter to respondent pointed out the defects. There is nothing in the record to show when he discovered them. If he did not discover the defects until shortly before February 18, 1952, he could not have brought action prior to February 15. In any case, he should not be required to bring action until the filings closed on the penalty of being found guilty of laches. Up to that time, he would not know what form the ballot would take. In fact, until the time of withdrawal had expired, petitioner could not know the contents of the ballot. Furthermore,

the fatal defect to which we have called attention was patent, and intervener was in as good a position to discover it as petitioner. Nothing was done by petitioner to mislead intervener. It is true that if petitioner had called attention to the defect prior to February 15, or intervener herself had discovered it, it would have been feasible for intervener and the other proposed delegates to circulate new petitions and remedy the deficiencies; but the charge that petitioner is guilty of laches under the facts here rests on a poor legal basis.

After the filings closed on February 15, there was nothing that intervener or the other proposed delegates could have done. The status of the petition became fixed on that day. The fatal defect could not be removed. There was nothing which petitioner thereafter could have done to place intervener and her associates in a position which was worse than that they were already in. There is nothing in the instant case to show that there has been such an unreasonable delay by petitioner of a known right as to prejudice intervener and the others and to make it inequitable to grant the relief prayed for.

Intervener also contends that the delay in bringing the action makes it impossible for respondent to perform his duties under the law as set out in respondent's return to the order to show cause. But the difficulties of respondent are not the difficulties of intervener, and respondent has not set out a plea of laches in his return, nor could he very well do so. The last day for withdrawal was February 25. The earliest date on which respondent could send the copy of the ballot to the printer was February 26. This action was commenced on that same day and the decision rendered by this court on February 28. Such speed does not support a claim of laches.

It is ordered that the motion for an order summarily discharging the order to show cause herein and dismissing the petition be and the same is hereby denied.

It is further ordered that respondent, Mike Holm, as secretary of state of the state of Minnesota, desist from placing upon the

ballots for the Republican party to be used in the presidential primary election to be held within the state of Minnesota on March 18, 1952, the name of Dwight D. Eisenhower as a candidate of the Republican party for the nomination for president and the names of proposed delegates to the next national convention of the Republican party.