Ralph OLSON, Petitioner,

v.

Robert ZUEHLKE, as County Auditor of Itasca County, Minnesota, Respondent,

Kirk Peysar, as County Auditor of Aitkin County, Minnesota, Respondent,

Mary Kiffmeyer, Minnesota Secretary of State, Respondent,

Loren Solberg, Intervenor.

No. C2–02–1353.

Supreme Court of Minnesota.

Oct. 17, 2002.

Matthew W. Haapoja, Trimble & Associates, Ltd., Minneapolis, MN, for Petitioner.

John J. Muhar, Itasca County Attorney, Grand Rapids, MN, Bradley C. Rhodes, Aitkin County Attorney, Aitkin, MN, for Respondents.

## OPINION

PER CURIAM.

Petitioner Ralph Olson filed a petition under Minn.Stat. § 204B.44 (2000) alleging a wrongful act or omission by the respondent county auditors in their placement of candidate Loren Solberg's name on the ballot for the 2002 election. The petition was referred to a referee to take and receive evidence and make findings of fact relative to petitioner's claim that the candidate will not have resided in Legislative District 3B for six months immediately preceding the general election as required by Minn. Const. art. IV, § 6. The referee found that Solberg established residency in District 3B. This opinion confirms the order filed on August 28, 2002, denying the petition.

Petitioner is an eligible voter and elector in Legislative District 3B. He claimed in his petition that Solberg was required to live in District 3B from and after May 5, 2002, to establish residency as required by the Minnesota Constitution. Petitioner claimed Solberg did not reside within District 3B at 2214 Southwest Third Avenue in Grand Rapids, Minnesota, as he represented in his affidavit of candidacy filed with the secretary of state, but at 115 Fifth Avenue in Bovey, Minnesota, which is not in District 3B as a result of a redistricting plan that went into effect on March 19, 2002. In support of the petition, petitioner attached an affidavit from Gordon Newstrom, who attests that he owned the property at 2114 Third Avenue in Grand Rapids and sold it to Solberg on June 17, 2002. Newstrom claims in the affidavit that he resided on the property until July 1, 2002. Petitioner also attached to his petition a copy of Solberg's resident combination fishing license processed on May 8, 2002, which listed the Bovey address.

We issued an order requiring the respondent county auditors, the secretary of state, and Solberg to respond to the petition. Solberg denied the allegations in the petition and moved to dismiss the order to show cause on several grounds. We deferred ruling on the motions and appointed the Honorable Edward Toussaint, Jr., to serve as referee in the matter to take and receive all evidence and make findings of fact. *See Parsons v. Hickey*, 294 Minn. 543, 544, 201 N.W.2d 739, 740 (1972); *Moe v. Alsop*, 288 Minn. 323, 325, 180 N.W.2d 255, 257 (1970).

The referee found that Solberg is and has been since 1983 a member of the Minnesota House of Representatives. After the redistricting plan was announced on March 19, 2002, Solberg decided to move within the new boundaries of District 3B, which he believed encompassed 70–75% of his former district. On April 16, 2002, Solberg and his wife entered into a purchase agreement with Newstrom to purchase Newstrom's townhouse at 2114 Southwest Third Avenue in Grand Rapids,

which is in District 3B. The Solbergs asked for earlier possession or a leaseback arrangement, but Newstrom, who was 89 years old at the time, was unwilling to give up possession before July 2002. In his affidavit in response to the petition, Solberg stated, "Because Mr. Newstrom had no other place to move, I agreed to allow him to stay in the house until a delayed closing." Newstrom acknowledged in writing receipt of $1.00 for what Solberg characterized as rental of the "facility," and what Newstrom characterized as use of the mailbox. On April 23, 2002, Solberg and his wife arranged financing of the townhouse purchase.

On April 16, 2002, Solberg applied for a new voter registration card with the Grand Rapids address. Solberg's wife's pay stub for the pay period ending April 30, 2002, reflects the change to the Grand Rapids address. On April 22, 2002, Solberg e-mailed his colleagues with his new address.

From May 5 to July 1, 2002, Solberg collected his mail and visited the townhouse numerous times. He did not have a key to the unit, but stayed overnight there on April 30, 2002.[1] Because the legislature was in session, Solberg spent some nights during this period at his St. Paul apartment, but primarily stayed at the Bovey house. He also testified that during this time he spent time at his cabin, at Lake Vermillion, and visiting family in South Dakota. Solberg and his wife listed the Bovey property for sale with a realtor on May 30, 2002.

Solberg moved into the Grand Rapids townhouse on July 1, 2002, and from that date to August 19, 2002, he has stayed there approximately 10 to 15 nights. The remaining time has been spent on vacation and in Bovey.

Based on all the evidence, the referee found that Solberg had done all that is reasonably possible to establish residency in District 3B and in fact established such residency.

### I.

We first address Solberg's motion to dismiss on the grounds of untimeliness. As set forth more fully in the companion case *Piepho v. Bruns*, 652 N.W.2d 40 (Minn.2002), in the election context we ask whether the petitioner has so unreasonably delayed asserting a known right as to prejudice others. *See Fetsch v. Holm*, 236 Minn. 158, 163, 52 N.W.2d 113, 115 (1952). The same filing dates apply in this case as in *Piepho*, and, as in that case, it is not clear when petitioner first became aware of a question with respect to Solberg's residency. In the absence of this information, we cannot conclude that petitioner failed to assert a *known* right within a reasonable period, and deny the motion to dismiss on this basis.[2]

---

1. The referee stated in his findings that Solberg stayed overnight at the townhouse once during the period from May 5 to July 1, 2002. At the hearing, Solberg testified he spent just one night at the townhouse and identified that date, using credit card records, as April 30, 2002. Because the record does not support the referee's findings in this regard, we disregard the referee's findings as to the date on which Solberg spent the night at the Grand Rapids address.

2. In his motion to dismiss, Solberg also claims (a) the petition was brought in bad faith, solely for political purposes, and not based upon facts; (b) the petition is insufficient because the allegations are based solely on information and belief; and (c) the petition fails to provide a basis to grant the relief requested. Because we opt to address the petition on the merits, we decline to rule on these issues.

## II.

We turn to the substantive issue of whether petitioner has sustained his burden of establishing that Solberg has not resided in District 3B for six months prior to the November 5, 2002, general election. We incorporate herein the analysis set forth in *Piepho* and focus on evidence of physical presence and intent in the context of a sitting legislator whose change in residence results from redistricting. *Piepho,* 652 N.W.2d at 45. In this case, the referee found that on April 16, 2002, well before the May 5 deadline, Solberg and his wife signed a purchase agreement for a townhouse within District 3B. While they attempted to negotiate for earlier possession, Newstrom was unwilling to agree to give up possession before July 1, 2002.

The evidence from which it can be inferred that Solberg intended to reside in District 3B is strong. Signing a purchase agreement, as opposed to simply renting an apartment, demonstrates the Solbergs intended to make Grand Rapids their home as soon as practicable under the circumstances. While evidence of physical presence is admittedly thin, neither physical presence nor intent is determinative. *Piepho,* 652 N.W.2d 40. As in *Piepho,* 652 N.W.2d at 42, we consider physical presence here in the context of the ongoing legislative session that necessitated Solberg's presence in St. Paul, and the short time between announcement of the redistricting plan on March 19 and the residency deadline of May 5. Solberg had a short period in which to find a new home, and Newstrom's desire not to vacate until July 1 the property they settled upon should not, standing alone, negate a finding of residency. *See Parsons,* 294 Minn. at 547, 201 N.W.2d at 741 (considering residency in light of move made necessary by redistricting). On slightly different facts, we may conclude otherwise, but based on the record as a whole, and in particular the strong evidence of intent to reside in the district as evidenced by the purchase agreement for a townhouse in the district, the evidence is sufficient to support the conclusion that Solberg established residency for purposes of Minn. Const. art. IV, § 6.

Petition denied.

HANSON, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.