### Mark PIEPHO, Petitioner,

#### v.

### Robert BRUNS, as County Auditor of Nicollet County, Minnesota, Respondent,

### Sandra King, as County Auditor of Blue Earth County, Minnesota, Respondent,

### Lisa Pfarr, as County Auditor of Sibley County, Minnesota, Respondent,

### Mary Kiffmeyer, Minnesota Secretary of State, Respondent,

### John C. Hottinger, Intervenor.

#### No. C4-02-1354.

Supreme Court of Minnesota.

Oct. 17, 2002.

Matthew W. Haapoja, Trimble & Associates, Ltd., Minneapolis, MN, for Petitioner.

Michael K. Riley, Sr., Nicollet County Attorney, St. Peter, MN, Ross E. Arneson, Blue Earth County Attorney, Mankato, MN, David E. Schauer, Sibley County Attorney, Gaylord, MN, for Respondents.

## OPINION

PER CURIAM.

Petitioner Mark Piepho filed a petition under Minn.Stat. § 204B.44 (2000) alleging a wrongful act or omission by the respondent county auditors in their placement of candidate John Hottinger's name on the ballot for the 2002 election. The petition

was referred to a referee to take and receive evidence and make findings of fact relative to petitioner's claim that the candidate will not have resided in Legislative District 23 for six months immediately preceding the general election as required by Minn. Const. art. IV, § 6. The referee found that Hottinger established residency in District 23. This opinion confirms the order filed on August 28, 2002, denying the petition.

Petitioner is an eligible voter and elector in Legislative District 23. He claimed in his petition that Hottinger was required to live in District 23 from and after May 5, 2002, to establish residence as required by the Minnesota Constitution. Petitioner claimed Hottinger did not reside within District 23 at 304 West Grace Street in St. Peter, Minnesota, as the candidate represented in his affidavit of candidacy filed with the secretary of state. Petitioner also attached to his petition a property tax record indicating that Hottinger claimed the residential homestead classification for 20100 Horseshoe Lane in Mankato, outside the district. In addition, petitioner asserted that Hottinger failed to change his address on his driver's license to 304 West Grace Street until May 17, 2002, 12 days after the May 5, 2002, deadline. In support of the petition, petitioner later submitted an affidavit from two people who claimed to have lived at 304 West Grace Street, the residence Hottinger claimed as his, until May 24, 2002.

We issued an order requiring the respondent county auditors, the secretary of state, and Hottinger to respond to the petition. Hottinger denied the allegations in the petition and moved to quash the order to show cause. We deferred ruling on the motion to quash and appointed the Honorable Edward Toussaint, Jr., to serve as referee in the matter to take and receive all evidence and make findings of fact. *See Parsons v. Hickey,* 294 Minn. 543, 544, 201 N.W.2d 739, 740 (1972); *Moe v. Alsop,* 288 Minn. 323, 325, 180 N.W.2d 255, 257 (1970).

The referee found that Hottinger and his wife own property at 20100 Horseshoe Lane, Mankato, Minnesota, which is not in District 23 as recently reconfigured through redistricting. Sometime after the Minnesota Special Redistricting Panel's March 19, 2002, order mandating use of the panel's redistricting plan, Hottinger and his wife decided to move so that Hottinger would be eligible to run for office in 2002 in District 23. On April 17, 2002, Hottinger entered into a 12-month lease for 304 West Grace Street, St. Peter, in District 23, with an effective date of May 1, 2002. A colleague from Hottinger's law firm paid the rent for the first month and was reimbursed by Hottinger.

Hottinger took several steps to notify others of his new address. On May 1, 2002, Hottinger signed a voter registration card reflecting the Grace Street address. In early May, he took steps to change the address on his driver's license to the Grace Street address. His requests for mileage reimbursement from the state reflected transit from the Grace Street address. In May 2002 he received mail, including insurance forms, at the new address.

The previous tenant, Mary Gartner, had signed a one-year lease for 304 West Grace Street, beginning May 1, 2001. Through a special arrangement with the landlord, to which Hottinger apparently did not object, Gartner and her fiancé held over her tenancy and occupied the premises until May 24, 2002. There was another space in the building, which included a bathroom but no kitchen, into which Hottinger moved clothing and books on May 1, 2002. During this period, the legislature was in session with Hottinger serving as Assistant Senate Majority Leader. Hottinger was at his

office at the Capitol most days and had an apartment in St. Paul that he leased for use during the legislative session. He slept at the Grace Street address once before May 7. The session ended on May 20, 2002. On May 27, 2002, after the holdover tenants moved out, Hottinger moved into the established apartment at 304 West Grace Street, which included kitchen, bath, and sleeping facilities.

Based on this evidence, the referee found that Hottinger had done all that was reasonably possible to establish residence in District 23 and that Hottinger in fact established such residence.

## I.

We first address Hottinger's motion to quash the order to show cause on the basis that it was insufficient on its face and untimely. While most of the allegations in the petition are of questionable relevance, an affidavit submitted in support of the petition alleged that other people and not Hottinger were living at the address Hottinger claimed as his during May 2002. Thus, the petition met the threshold requirement of raising a material issue of fact regarding the candidate's residence.

 With respect to the timeliness of the petition, in the election context we especially consider the application of laches, an equitable doctrine applied to "prevent one who has not been diligent in asserting a known right from recovering at the expense of one who has been prejudiced by the delay." *Aronovitch v. Levy*, 238 Minn. 237, 242, 56 N.W.2d 570, 574 (1953). The doctrine has particular application in challenges to ballot preparation and election proceedings. *Peterson v. Stafford*, 490 N.W.2d 418, 419 (Minn.1992). "In considering laches, we have held that the practical question in each case is whether there has been such an unreasonable delay in asserting a known right, re-

sulting in prejudice to others, as would make it inequitable to grant the relief prayed for." *Fetsch v. Holm*, 236 Minn. 158, 163, 52 N.W.2d 113, 115 (1952).

Here, the close of the candidate filing period occurred on July 16, 2002. The petition in this case was filed on August 9, 2002, two days before respondents county auditors were required to have absentee ballots for the September 10, 2002, primary available. *See* Minn.Stat. § 204B.35, subd. 4 (2000). Thus, any challenger had a limited period of time to prepare a petition before the absentee ballots were to be distributed. In this case, the record does not disclose when petitioner first became aware of a question with respect to Hottinger's residency. Given the state of the record, we cannot conclude that petitioner failed to assert a *known* right within a reasonable period, and therefore deny the motion to quash.

## II.

 We turn to the substantive issue of whether petitioner has sustained his burden of establishing that Hottinger will not have resided in District 23 for at least six months immediately preceding the November 5, 2002, general election. Article IV, section 6, of the Minnesota Constitution requires:

> Senators and representatives shall be qualified voters of the state, and shall have resided one year in the state and six months immediately preceding the election in the district from which elected.

The legislature has codified this constitutional provision in the election laws, Minn. Stat. § 204B.06, subd. 4(f) (2000), but the legislature has not adopted a definition of "residency" for evaluating candidate qualifications. The legislature has, however, set forth residency principles with respect

to voters. *See* Minn.Stat. § 200.031 (2000).[1] While it is logical to apply the same residency principles applicable to voters to candidates, we are reluctant to do so because the legislature appears to have specifically *not* incorporated the voter residency principles into chapter 204B where its codification of the residency requirement for candidates lies. While chapter 204B contains a provision stating that the definitions in chapter 200 apply to chapter 204B, *see* Minn.Stat. § 204B.01 (2000), the "definitions" in chapter 200 are contained in Minn.Stat. § 200.02 (2000), and the residency principles set forth in Minn.Stat. § 200.031 are not labeled as a "definition" of residency.

■ Nonetheless, in deciding what factors best implement the constitutional directive in Minn. Const. art. IV, § 6, that elected representatives reside in the district from which elected, we naturally focus on physical presence and intent, as we have done in the voter residency context. *See Bell v. Gannaway*, 303 Minn. 346, 350,

227 N.W.2d 797, 801 (1975) (interpreting factors in precursor to Minn.Stat. § 200.031 for voter residency to focus on physical presence and intent). We believe the concept of residency is captured and perhaps best summarized by Minn.Stat. § 200.031(i) (2000): "The mere intention to acquire a new residence, is not sufficient to acquire a new residence, unless the individual moves to that location; moving to a new location is not sufficient to acquire a new residence unless the individual intends to remain there." Accordingly, we conclude that the foremost considerations with respect to residency in the election context are physical presence and intent. As the provision quoted above demonstrates, neither factor is determinative—each informs the other. That is, intent can be demonstrated in many ways, including but not limited to physical presence, and we consider physical presence to the extent that it manifests intent to reside in the district.

As we noted in *Bell*, these considerations are largely questions of fact, and we there-

---

1. Minnesota Statutes § 200.031 provides in relevant part:

 Residence shall be determined in accordance with the following principles, so far as they may be applicable to the facts of the case:

 (a) The residence of an individual is in the precinct where the individual's home is located, from which the individual has no present intention of moving, and to which, whenever the individual is absent, the individual intends to return;

 (b) An individual does not lose residence if the individual leaves home to live temporarily in another state or precinct;

 (c) An individual does not acquire a residence in any precinct of this state if the individual is living there only temporarily, without the intention of making that precinct home;

 (d) If an individual goes into another state or precinct with the intention of making it home or files an affidavit of residence there for election purposes, the individual loses residence in the former precinct;

 * * * *

 (f) Except as otherwise provided in this section, an individual's residence is located in the precinct where the individual's family lives, unless the individual's family is living in that precinct only temporarily;

 (g) If an individual's family lives in one precinct and the individual lives or does business in another, the individual's residence is located in the precinct where the individual's family lives, unless the individual establishes a home in the other precinct and intends to remain there, with or without the individual's family;

 (h) The residence of a single individual is in the precinct where the individual lives and usually sleeps;

 (i) The mere intention to acquire a new residence, is not sufficient to acquire a new residence, unless the individual moves to that location; moving to a new location is not sufficient to acquire a new residence unless the individual intends to remain there;

 (j) The residence of an individual who is working temporarily in any precinct of this state is in the precinct where the individual's permanent home is located[.]

fore defer to the findings of the referee who heard the witnesses testify. *Bell,* 303 Minn. at 350, 227 N.W.2d at 801. In this case, the referee found that Hottinger demonstrated his intent to reside in the district by entering the space adjacent to 304 West Grace Street, located in District 23 on May 1, 2002, and thereafter by moving into 304 West Grace Street after the holdover tenants moved out. These findings support the conclusion that Hottinger had sufficient presence in District 23 and intent to reside there to meet the residency requirement of Minn. Const. art. IV, § 6.

Petitioner claims that Hottinger did not have a physical presence in the district until at least May 27, 2002. In his written objections to the referee's findings of fact, petitioner claims that Hottinger did not establish residence in the district because he did not maintain a "physical, bodily presence in a readily ascertainable habitual manner" during the time period in question. Petitioner does not cite any authority for his "physical, bodily presence" standard, and fails to establish how it implements the constitutional requirement of residence.

Physical presence is undoubtedly significant to establishing residency; however, we consider here physical presence in the context of a sitting legislator attempting to complete the legislative session. We note that petitioner does not question Hottinger's physical presence in the district after May 27, 2002. Thus, it is only roughly the period while the legislature was still in session that is at issue herein. In this context, application of petitioner's "physical, bodily presence" standard may well result in the disqualification of every sit-

ting legislator when the legislative session, which arguably requires legislators to have a "physical, bodily presence" at the Capitol, runs beyond the first week in May and into the six-month residency period. To impose the physical presence standard that petitioner demands could conceivably prevent legislators from fulfilling their duties as legislators in the final days and weeks of the session, and we decline to impose such an unreasonable standard. It is sufficient for a physical presence that Hottinger leased an apartment in the new district, moved his personal belongings into adjacent living space pending the departure of holdover tenants, and spent some time there while the legislative session continued.

Redistricting provides further context for the referee's findings. In this case, Hottinger and other legislators learned on March 19, 2002, that they no longer lived in the districts with a majority of people they had previously represented, requiring them to make a decision regarding whether to run in a new district or move to the reconfigured district where the candidate's constituency resides. Almost immediately upon the release of the redistricting plan, Hottinger consulted with his wife and announced that he would move. There were just 47 days between March 19 and May 5, 2002, and it is reasonable to expect that the candidate's accommodations may appear temporary in light of the difficulty of finding housing on short notice. Hottinger's intent to establish residency in District 23, as evidenced by his announcement to that effect, execution of the lease, voter registration, request for mileage reimbursement, and driver's license application, is clear.[2] In *Parsons,* we dealt with a

---

2. The evidence that the Horseshoe Lane property was classified as homestead does not undermine these facts. The homestead property classification was established before the redistricting plan and there is no evidence in the record that Hottinger applied for a homestead classification on his homestead property after the plan came out.

similar situation—redistricting changing the boundaries of legislative districts—and held there that the petitioner had failed to overcome the findings made by the referee that the candidate "did all that was reasonably possible to establish a residence in Legislative District 42A." 294 Minn. at 547, 201 N.W.2d at 742. The same conclusion is warranted here.

Petition denied.

HANSON, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.