**Brian MELENDEZ, et al., Petitioners,**

**v.**

**Patrick H. O'CONNOR, Respondent,**

**Michelle D. DesJardin, Respondent.**

**No. C7–02–1722.**

Supreme Court of Minnesota.

Dec. 19, 2002.

Alan W. Weinblatt, Weinblatt & Gaylord PLC, St. Paul, MN, for Petitioners.

M. Katherine Doty, Special Assistant Hennepin County, Anoka, MN, Attorneys for Respondents.

Mike Hatch, Attorney General, State of Minnesota, Kenneth E. Raschke, Jr., Assistant Attorney General, St. Paul, MN, for Secretary of State Mary Kiffmeyer.

Jason Samuels, Minneapolis, MN, pro se.

## OPINION

PER CURIAM.

Petitioners Brian Melendez and Ruth Stein filed a petition under Minn.Stat. § 204B.44 (2002) alleging that respondents, the Hennepin County Auditor/Treasurer and the Hennepin County Elections Manager, were about to commit an error in the preparation of the ballot for legislative district 59B by including Jason Samuels' name for the office of state representative. Petitioners alleged that Samuels had not resided in district 59B for the six months immediately preceding the November 5, 2002 election as required by Minn. Const. art. IV, § 6. Because there were no relevant facts in dispute, we did not appoint a referee. We issued an order

granting the petition on October 15, 2002, and this opinion confirms that order.

Before June 1, 2002, Jason Samuels resided at 1206 Fourth Street Southeast, Minneapolis, which is located within legislative district 59B. On June 1, Samuels moved to 627 Pierce Street Northeast, Minneapolis. Before he moved, Samuels attempted to verify that the Pierce Street address was located within the boundaries of legislative district 59B. He did so by checking the Secretary of State's official website. According to the Director of the Election Division of the Office of the Minnesota Secretary of State, between March 22 and August 20, 2002, the secretary's website contained a disclaimer stating that information on the website regarding polling locations might not be current and would be updated later due to legislative redistricting ordered by this court in March 2002. The record does not indicate whether Samuels was aware of this disclaimer. Nonetheless, after visiting the website, Samuels concluded that the Pierce Street address was within district 59B.

On July 16, 2002, Samuels filed to run for state representative for legislative district 59B. In his affidavit of candidacy, which was a form provided by the Secretary of State, Samuels listed the Pierce Street address as his legal residence. The form affidavit required a candidate running for state senator or state representative to swear or affirm that he or she "will be a resident of Minnesota at least one year and of this district for six months on the day of the general * * * election."

On August 18, 2002, Samuels discovered that the Secretary of State's website had been updated for redistricting and that his Pierce Street address was actually located in another legislative district—district 59A. Three days later, he sent an e-mail message to several parties, including the Election Division Director of the Secretary of State. In the e-mail, he explained his situation and stated that he "verified the district of this address as best [he] could through the Secretary of State's website." He stated that he was prepared to immediately move to another address within the district, but, because of the expenses involved in moving, he wanted to know whether it would be "legally proper" for him to do so. He also stated:

> I want my candidacy to be legitimate and in full accordance with the law. If I have inadvertently violated the law, and if moving again would not properly rectify my error, than [sic] I want to know what proper steps I can take to own up to and resolve my situation.

The Election Division Director forwarded Samuels' e-mail message to respondent Michelle DesJardin, Hennepin County Elections Manager. In a letter dated August 28, 2002, DesJardin informed Samuels that Minn. Const. art. IV, § 6 requires state representatives to have resided in the district from which elected for the six-month period immediately preceding the election. She informed him that because of this provision, his offer to move "would not be a viable option." DesJardin also informed Samuels that it was too late for his name to be removed from the September 10, 2002 primary ballot, but that if he won the primary election, her office would not place his name on the ballot for the general election because it was "not possible for [him] to meet the constitutional qualifications to be elected from District 59B."

Meanwhile, on August 28, 2002, Samuels signed a lease for a residence located at 612 Tenth Avenue Southeast, Minneapolis, and moved to the Tenth Avenue address on September 1. This address is located within legislative district 59B. It appears Samuels moved to the Tenth Avenue ad-

dress before he received DesJardin's letter informing him that moving into the district would not be sufficient to satisfy the constitutional residency requirement.

In a letter to DesJardin dated September 10, 2002, Samuels acknowledged receipt of her August 28 letter and informed her of his new address. He also informed DesJardin that his "intent to remain at 627 Pierce was based on the belief that this address was within the correct boundary lines of the district" and that "the moment that [he] discovered the discrepancy this intent became null and void." He further stated that his letter would serve as an amendment to his affidavit of candidacy changing his legal residence.

In a letter dated September 16, 2002, DesJardin informed Samuels that his contentions regarding residency were beyond the jurisdiction of the Hennepin County Auditor. She stated that his name would appear on the ballot for the general election unless the Hennepin County Auditor was "otherwise directed that to do so would be an 'error' within the meaning of Minn.Stat. Section 204B.44." DesJardin also stated she would inform the other candidates for the office of state representative for legislative district 59B of the decision by sending them a copy of her letter.

Approximately two weeks later, on October 2, 2002, petitioners filed their petition seeking to have Samuels' name removed from the ballot on the grounds that he had not resided in legislative district 59B for the six-month period immediately preceding the November 5, 2002 general election. We issued an order granting the petition on October 15, 2002.

## I.

■ As a preliminary matter, we must determine whether the petition should be dismissed for laches. In election contests, "we especially consider the application of laches, an equitable doctrine applied to 'prevent one who has not been diligent in asserting a known right from recovering at the expense of one who has been prejudiced by the delay.'" *Piepho v. Bruns*, 652 N.W.2d 40, 43 (Minn.2002) (quoting *Aronovitch v. Levy*, 238 Minn. 237, 242, 56 N.W.2d 570, 574 (1953)). Dismissal under the equitable doctrine of laches is appropriate if "there has been such an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant the relief prayed for." *Fetsch v. Holm*, 236 Minn. 158, 163, 52 N.W.2d 113, 115 (1952).

We conclude that we need not determine whether or when petitioners were put on notice of Samuels' residency defect because regardless of whether there has been an unreasonable delay by petitioners in filing their petition, there would be no prejudice to Samuels or others in granting the relief requested. The petition alleges that Samuels is not qualified to run for office in district 59B because he moved out of the district on June 1. If this move resulted in a change in Samuels' residence to a place outside district 59B, then he is not eligible to run for state legislative office in district 59B regardless of the timing of the challenge to his eligibility. There is nothing in the record indicating that Samuels was prejudiced by the timing of the filing of the petition. Therefore, the doctrine of laches does not require dismissal of the petition and we will consider the petition on its merits.

## II.

■ We did not appoint a referee to make findings of fact because we concluded that there were no facts in dispute. As a result, we will apply a standard of review similar to that applicable to motions for

summary judgment. Under this standard, petitioners are entitled to the relief requested if, viewing the facts in the light most favorable to Samuels, Samuels has, as a matter of law, failed to satisfy the constitutional residency requirement. *See, e.g., Gradjelick v. Hance,* 646 N.W.2d 225, 234 (Minn.2002) (setting forth summary judgment standard).

Article IV, section 6, of the Minnesota Constitution requires:

> Senators and representatives shall be qualified voters of the state, and shall have resided one year in the state and six months immediately preceding the election in the district from which elected.

The legislature has codified this constitutional provision in the election laws. Minn.Stat. § 204B.06, subd. 4(f) (2002). In *Piepho,* we noted that the legislature has not adopted a definition of "residency" for evaluating candidate qualifications and held that the two primary considerations in determining candidate residency are physical presence and intent. 652 N.W.2d at 44. We also concluded that the

> concept of residency is captured and perhaps best summarized by Minn.Stat. § 200.031(i) (2000): "The mere intention to acquire a new residence, is not sufficient to acquire a new residence, unless the individual moves to that location; moving to a new location is not sufficient to acquire a new residence unless the individual intends to remain there."

652 N.W.2d at 44.

Samuels claims that he intended to reside within legislative district 59B for the six months immediately preceding the election and that this intention is sufficient because he ultimately established a residence within the district. However, a mere intention of establishing residency in a particular district without actually having a physical location in the district at

which to establish residency is not sufficient. There is nothing in the record that allows us to conclude that between June 1 and August 28 there was any location within legislative district 59B where Samuels could claim he resided. Because Samuels did not have a physical presence in legislative district 59B for almost two months during the six-month period immediately preceding the general election, we hold that he is not eligible to run for state legislative office in that district.

Petition granted.

Took No Part.

PAGE, J., and HANSON, J., took no part in the consideration or decision of this case.

GILBERT, Justice (concurring).

While I generally concur with the reasoning of the court, it appears from a review of the record that the Minnesota Secretary of State's nonfeasance created confusion in this redistricting year. The statewide redistricting plan was decided by a court-appointed panel on March 19, 2002. The Secretary of State acknowledges maintaining a metropolitan area legislative district map of the newly created legislative districts on its website, but says it is not sufficiently detailed to determine the district location of specific addresses. However, the candidate in this case relied on this information plus the Secretary of State's website polling place locator. This information confirmed to this candidate that the precinct polling place of his address at 627 Pierce Street N.E. was within legislative District 59B. This was evidently incorrect but the error was based on misinformation that was maintained by the Secretary of State's website through July 29, 2002. The filings for office closed on Tuesday, July 16, 2002.

While it is true that there was a cautionary disclaimer on the Secretary of State's

polling place website stating that the information may be out-of-date due to redistricting, the Secretary of State committed nonfeasance in not having accurate and timely redistricting information for candidates to rely on before the filings closed. The Secretary of State, through a sworn affidavit dated October 8, 2002 from the Director of the Elections Division of the Office of the Minnesota Secretary of State, indicates that prior to July 29, 2002, " * * * the district information may have been outdated." Then, in that same affidavit, the Director indicates that:

> Electronic in-depth legislative district information is only available on the Legislative Coordinating Commission GIS website. Detailed maps may also be purchased from the Office of the Secretary of State. This information is also available from the election filing office, which in this case was the Hennepin County Auditor.

The Office of the Secretary of State posted misinformation on its website through July 29, 2002, and the error was exacerbated by failing to have appropriate references or Internet links to the Legislative Coordinating Commission GIS website and failing to indicate that maps may be purchased from the Office of the Secretary of State and are available from the election filing office. The Secretary of State, as the chief election official of the state, held herself out to be an expert yet produced material misinformation, which this candidate relied upon. Notwithstanding this nonfeasance, I must concur with the majority opinion because of the constitutional requirement of residency, but this mishap occurred in large part because of the Secretary of State's actions and inactions.