Rick STUDER, Petitioner,

v.

Mary KIFFMEYER, Minnesota
Secretary of State,
Respondent,

Randy Schreifels, Stearns County
Auditor/Treasurer,
Respondent,

Joan Neyssen, Benton County
Auditor/Treasurer,
Respondent,

Ramona Doebler, Sherburne County
Auditor/Treasurer, Respondent,

and

Sue Ek, Intervenor–Respondent.

No. A05–2412.

Supreme Court of Minnesota.

April 20, 2006.

Alan W. Weinblatt, Asha Sharma, Weinblatt & Gaylord, P.L.C., St. Paul, MN, for Petitioner.

Kathleen A. Heaney, Sherburne County Attorney, Todd R. Schoffelman, Assistant County Attorney, Elk River, MN, for Respondent, Ramona Doebler.

Robert J. Raupp, Benton County Attorney, Foley, MN, for Respondent, Joan Neyssen.

Tony P. Trimble, Matthew W. Haapoja, Trimble & Associates, Ltd., Minneapolis, MN, for Respondent, Sue Ek.

Janelle P. Kendall, Stearns County Attorney, Marcus W. Miller, Chief–Civil Division, Stearns County Attorney's Office, St. Cloud, MN, for Respondent, Randy Schreifels.

Mike Hatch, Attorney General, Kenneth E. Raschke, Jr., Assistant Attorney General, St. Paul, MN, for Respondent, Mary Kiffmeyer.

## OPINION

PER CURIAM.

Petitioner Rick Studer filed a petition under Minn.Stat. § 204B.44 (2004) requesting an order directing respondent election officials to remove the name of Sue Ek from the ballot for State Representative from House District 15B at the special election to be held on December 27, 2005. Petitioner alleged that Ek would not have resided in District 15B [1] for six months immediately preceding the special election as required by Minn. Const. art. IV, § 6. Ek intervened as a respondent, filed a response in opposition to the petition, and moved to dismiss the petition. The matter was referred to a referee to take evidence and make findings of fact. The referee found that Ek claimed residency in St. Paul, which is not in District 15B, within the six-month period preceding the election. This opinion confirms our order filed December 19, 2005, granting the petition and ordering Ek's name removed from the ballot.

On November 21, 2005, Governor Tim Pawlenty filed a Writ of Special Election for House District 15B and Senate District 15 with respondent Secretary of State, under Minn.Stat. §§ 204D.17 and 204D.22, subd. 1 (2004). The writ established November 28–December 1 as the candidate filing period, December 2 as the deadline for candidate affidavits of withdrawal, December 13 as the date for a special primary,[2] and December 27 as the date for the special election.

---

1. District 15B is located in parts of Benton, Sherburne, and Stearns Counties.

2. Because only one candidate filed for each office from each participating party, no pri-

On November 28, 2005, Ek filed a Minnesota Affidavit of Candidacy for the District 15B house seat, in which she swore or affirmed that on the day of the special election she would have been a resident of District 15B for six months immediately preceding the election. Ek's affidavit of candidacy listed her residence as her parents' home in St. Cloud, Minnesota.

On December 9, 2005, Studer, an eligible voter in District 15B, filed a petition with this court under section 204B.44 alleging that Ek resided at an address on Niles Avenue in St. Paul, Minnesota (the "Niles Avenue home"), until at least July 9, 2005, a date less than six months before the December 27 special election. The petition requested an order requiring that respondent election officials remove Ek's name from the special election ballot,[3] on the grounds that Ek would not have resided in the district for six months immediately preceding the special election as required by Minn. Const. art. IV, § 6.[4] Petitioner attached to the petition voter registration documents purporting to show that Ek was registered as a voter in St. Paul until September 16, 2005, various website references showing a St. Paul address for Ek, and a City of St. Paul Office of License, Inspections and Environmental Protection ("LIEP") Home Occupation Affidavit signed by Ek, indicating the Niles Avenue home as her "principal residence." Petitioner later submitted affidavits in support of the petition from two neighbors who claimed to have observed Ek residing at the Niles Avenue home until mid-September 2005, and an affidavit from an employee of LIEP describing his communication with Ek concerning a complaint that she was operating a business out of the Niles Avenue home, including the Home Occupation Affidavit she submitted in response to the complaint.

We issued an order requiring service on Ek and setting a deadline for response to the petition. Ek moved to intervene, filed a response denying the allegations in the petition, and moved to dismiss based on untimeliness. We appointed the Honorable George Stephenson to serve as referee to take evidence and make findings of fact and provided an opportunity for the parties to file objections to the referee's findings and argue the matter to this court.

At the evidentiary hearing, the two neighbors of the Niles Avenue home testified that they saw Ek living at the St. Paul home, picking up mail, mowing the lawn, walking a dog, and having groups of visitors, into the fall of 2005. One of the neighbors testified that he filed a complaint with the city about excessive business-related traffic around the Niles Avenue home.

A license inspector from LIEP testified that he spoke with Ek in response to the neighbor's traffic complaint in July 2005. The inspector testified that he explained the rules of running a home business to Ek, including the requirement that "in order to be able to run a home occupation, basically a business out of a home, you had

---

mary election was needed. Minn.Stat. § 204D.20, subd. 2 (2004).

**3.** Petitioner named Mary Kiffmeyer, Secretary of State, and the County Auditors/Treasurers of the three counties in which District 15B is located as respondents. We ordered petitioner to serve Ek and granted her subsequent motion to intervene.

**4.** Article IV, section 6, provides, "Senators and representatives shall be qualified voters of the state, and shall have resided one year in the state and six months immediately preceding the election in the district from which elected."

to live at * * * that home." He testified that Ek told him that she lived at the Niles Avenue home. The inspector testified he told Ek he would send her the rules for a home business and that she should read them and send back a signed affidavit of home occupation. He testified that the form Ek signed states that the home must be the principal residence of the person running the business to qualify as a home occupation.

The form, titled Home Occupation Affidavit, was introduced as an exhibit. The form, signed by Ek and dated July 9, 2005, states, "I, Susanne Ek, the undersigned, certify that I reside (RENTER) in the dwelling located at * * * Niles Avenue in Saint Paul. I would like to establish a non-profit/home office type of business at the aforementioned address. I understand and agree to comply with the conditions stipulated for home occupation." The form also includes the following statements:

A home occupation is an occupation carried on in a dwelling unit *by the resident* thereof; provided that the use is limited in extent and incidental and *secondary to the use of the dwelling unit for residential purposes* * * *.

* * * *

All home occupation activities in dwelling units of less than 4,000 square feet of total living area, * * *, shall be conducted by no more than two (2) persons, for one (1) of whom *the dwelling unit shall be the principal residence.*

* * * *

For the purpose of subdivision (7), *"principal residence" shall mean the dwelling where a person has established a permanent home from which the person has no present intention of moving.* A principal residence is not established if the person has only a temporary physical presence in the dwelling unit.

(Emphasis added.)

Ek testified that she resided first in a Randolph Avenue property owned by her parents and then at the Niles Avenue home, also owned by her parents. She ran a business in which she was engaged with her mother from both residences. The business paid rent to Ek's parents for the Niles Avenue home.

Ek testified that she decided in early 2005 to move back to St. Cloud permanently and told her parents and others about that decision. She began moving her possessions from the Niles Avenue home to her parents' home in St. Cloud, where she intended to live until she bought either her parents' home or a neighbor's home.

Ek testified that she continued to visit, and occasionally stay overnight, at the Niles Avenue home in conjunction with running the business. Especially when she had to travel out of state for her business, she would stay overnight at the St. Paul address because it was close to the airport.

Ek testified that she changed her driver's license address only when she wanted to change her voter registration because she associated the two together. She said she did not file a change-of-address form with the post office because she did not want mail from mailing lists following her to St. Cloud.

Ek testified that her conversation with the St. Paul license inspector did not involve whether the Niles Avenue home was her residence, but only the limit on the number of people she could have at the house at one time for her business. Ek testified that she did not carefully read the Home Occupation Affidavit that she signed and that she did not understand it to say anything about her residency. She also

thought she was only agreeing to the limit on the number of clients who could be at the house that she had discussed with the inspector. She thought her signature was on behalf of the business, indicating the business rented and occupied the property.

Ek's parents testified they understood Ek intended to move back to St. Cloud permanently. They believed she had done so before July 2005.

Based on the testimony and stipulated exhibits, the referee found as follows. Ek registered to vote in Sherburne County on September 16, 2005; she had been registered in Ramsey County until that date. Before November 21, 2005, Ek's home address was in St. Paul, according to Department of Public Safety driver's license records indicating that Ek was issued a license with an address in St. Cloud on November 21, 2005.

Ek's St. Paul next-door neighbor confirmed that during the summer of 2005 Ek continued to reside at the Niles Avenue home. In July of 2005, that neighbor lodged a complaint with LIEP concerning the volume of business-related traffic in and around the Niles Avenue home. Although Ek resided there, the Niles property was owned by her parents and at that time was also the site of a business operated by Ek, as the executive director, and her mother, as the company president.

The LIEP inspector discussed with Ek the complaint and the Home Occupation Affidavit that Ek would have to sign for permission to run her business out of the home. During the discussion, Ek told the inspector that she resided at the Niles Avenue home. The inspector also testified, and Ek acknowledged in her testimony, that no license for a home occupation would have been granted by the city if the person carrying on the business was not residing there.

Based on her conversation with the LIEP inspector, on July 9, 2005, Ek signed a Home Occupation Affidavit, in which she declared that she was residing at the Niles Avenue home. The document defines "Home Occupation" as "an occupation carried on in a dwelling unit by the resident thereof." In the affidavit, Ek acknowledged that she understood and agreed to comply with conditions stipulated for a home occupation.

Ek testified that she had only "skimmed" the Home Occupation Affidavit, that she was "terrible at reading documents like that," that she had signed the document at the direction of her mother, that she had done so as an officer of the company, and that she had not intended to indicate that she resided at the Niles Avenue home on July 9, 2005, when she signed the affidavit. Ek's attorney argued that the document confused her.

The referee expressly found that Ek's testimony regarding her lack of understanding about the affidavit of occupation was not credible. He found that the LIEP inspector's testimony was the most compelling. Finally, he found that Ek had submitted no credible evidence to refute the assertion that Ek would not have resided in District 15B for six months immediately preceding the December 27 election.

I.

In responding to the petition, Ek moved for dismissal based on lack of timeliness. She asserted that the petitioner did not bring the action as soon as he could have, and therefore the petition should be dismissed. Ek argued that the petition should have been filed as soon as she filed her affidavit of candidacy, on November 28.

We have explained that this kind of challenge to candidacy must be timely made:

"An applicant for the order must proceed promptly in view of the inherent limitations upon adequate judicial consideration." *Moe v. Alsop*, 288 Minn. 323, 331, 180 N.W.2d 255, 260 (1970). In assessing timeliness challenges in candidate residency cases, we stated, "In considering laches, we have held that the practical question in each case is whether there has been such an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant the relief prayed for." *Piepho v. Bruns*, 652 N.W.2d 40, 43 (Minn.2002) (quoting *Fetsch v. Holm*, 236 Minn. 158, 163, 52 N.W.2d 113, 115 (1952)). In two recent cases, we found that the record did not disclose when the petitioner became aware of the alleged question of residency, and therefore we could not conclude on the record that the petitioner failed to assert a *known* right in a reasonable time. *Id.*; *Olson v. Zuehlke*, 652 N.W.2d 37, 39 (Minn.2002).

Here, petitioner testified that he became aware of the information about Ek's residence in St. Paul in a telephone call from his counsel on December 7. Petitioner argues that although the writ of election stated that candidate filings closed on December 1, under the governing statute they actually did not close until December 6,[5] making the deadline for withdrawal of candidates December 7. He says, based on the information he received on December 7, he recognized a possible claim on December 8 and filed the petition on December 9.

In light of the tight time frame presented by the compressed deadlines of the special election schedule and the filing of the petition on December 9, two days after petitioner learned of the residency issue, we cannot fault petitioner for not bringing the petition sooner. Accordingly, in these circumstances, the petition was timely, and Ek's motion to dismiss fails.

## II.

A candidate who has not resided in the legislative district for six months immediately preceding the special election is not qualified to run for state legislative office in that district. *See Melendez v. O'Connor*, 654 N.W.2d 114, 118 (Minn. 2002). After the decennial legislative redistricting had taken place, in 2002 we heard several candidacy challenges based on the six-month residency requirement.[6] In addressing the standard for determination of residency for purposes of this requirement, we noted that the legislature has provided no definition of residency for these purposes and has chosen not to expressly incorporate statutory voter residency principles in this context. *Piepho*, 652 N.W.2d at 43–44. Nevertheless, we explained that, as with voter residency, "the foremost considerations with respect to residency in the election context are physical presence and intent." *Id.* at 44. Previously, the court had established that the party challenging residency bears a heavy burden:

the governor can set a filing deadline earlier, which would still result in filings that comply with the "no later than" deadline of the statute. We need not decide the limits of the governor's authority in this case.

5. According to petitioner, under Minn.Stat. § 204D.23, subd. 2 (2004), the last day for filing affidavits of candidacy was December 6, seven days before the scheduled special primary date of December 13. He contends the earlier date contained in the writ of election was incorrect. Section 204D.23, subdivision 2, does provide that "the affidavits and petitions shall be filed no later than the seventh day before the special primary." Arguably,

6. *Melendez*, 654 N.W.2d 114; *Piepho*, 652 N.W.2d 40; *Olson*, 652 N.W.2d 37; *Lundquist v. Leonard*, 652 N.W.2d 33 (Minn.2002).

An application for an order preventing the placement of a candidate's name upon an election ballot for any office must be timely made and clearly established. The burden upon the applicant to establish ineligibility must be a heavy one in view of the drastic nature of an affirmative order, both to the candidate and to the electorate.

*Moe,* 288 Minn. at 330–31, 180 N.W.2d at 260 (footnote omitted).

Ek filed written objections to the referee's findings. She primarily argued that the referee erroneously relied exclusively on the Home Occupation Affidavit and the license inspector's testimony, improperly ignoring substantial and uncontroverted testimony concerning Ek's intent to reside in St. Cloud and her physical presence there. She argued that the referee's singular reliance on the Home Occupation Affidavit ignores the standard for candidate residency established by this court in the 2002 cases, in which intent and physical presence were the key factors. Ek contended that the evidence here of intent and physical presence is far greater than was held sufficient to satisfy the residency requirement in those 2002 cases. At most, she asserted, the licensing evidence is one factor, and it is overcome by the significant intent and physical presence evidence, especially considering the heavy burden that petitioner must satisfy in order to prevail.

We have held that the factors that establish residency "are largely questions of fact, and we therefore defer to the findings of the referee who heard the witnesses testify." *Piepho,* 652 N.W.2d at 44–45 (citing *Bell v. Gannaway,* 303 Minn. 346, 350, 227 N.W.2d 797, 801 (1975)). Furthermore, we have emphasized that "[i]t is the role of the referee, and not this court, to evaluate the credibility of witnesses." *Lundquist,* 652 N.W.2d at 37 (citing *Nel-*

*son v. O'Neil Amusements,* 274 Minn. 555, 555–56, 142 N.W.2d 647, 648 (1966)).

In this case, the factual dispute does turn largely on credibility, and the referee made very explicit and emphatic findings in that regard. He stated:

Intervenor–Respondent Ek's testimony on this crucial issue [her misunderstanding of the affidavit of occupation] is simply not credible. Intervenor–Respondent Ek is an articulate woman who is and was well aware of the financial benefit derived by operating her business out of her home; she is the Executive Director of that business and in that capacity has been authorized to bind her company in contracts and other financial obligations. Her assertion in the Affidavit that "I, Susanne Ek, the undersigned, certify that I reside (RENTER) in the dwelling located at * * * Niles Avenue in St. Paul" is clear and unmistakable. The Court is unable to understand how a college graduate with degrees in Public Relations and Journalism might have been confused by this simple language.

The referee found further:

The most credible testimony and the most compelling evidence submitted at the hearing was that introduced through [the] LIEP Inspector * * *; he was the only objective, disinterested, apparently non-partisan witness at the hearing. Intervenor–Respondent Ek has submitted nothing to credibly refute the Petitioner's assertion that she will not have resided within District 15B for six months immediately preceding the special election on December 27, 2005.

In essence, Ek argues that the evidence of her intent to establish residence in St. Cloud and of her physical presence there before June 27, 2005, outweighs the contrary evidence of continued residence at the Niles Avenue home after that date.

There is certainly uncontroverted evidence of Ek's physical presence in St. Cloud before June 27, and there is testimony of Ek and her parents that Ek intended to change her residence from St. Paul to St. Cloud. If that evidence were counterbalanced by nothing more than evidence that Ek occasionally visited or stayed at the Niles Avenue home, it is very possible we would find, as we did in several of the 2002 cases, that the petitioner's heavy burden had not been met.

But here, there is more. The Home Occupation Affidavit signed by Ek on July 9 repeatedly references the requirement of residency. In that one-page document, in addition to the declaration that "I reside" in the subject dwelling, the document references "resident," "residency," or "residential purposes" at least seven times.[7] Although Ek contends that she did not read or understand the document she signed, she presents no sound basis on which we can overcome the referee's credibility determinations in this respect. The affidavit, coupled with the objective and impartial testimony of the LIEP inspector and supported by the observations of the St. Paul neighbors, is strong evidence of residency in St. Paul into July 2005. Ek counterbalanced that evidence only with her own testimony and that of her parents, which the referee found not credible.

The record fully supports the referee's findings. We conclude that petitioner did satisfy his heavy burden to establish that Ek did not reside in District 15B for the six months immediately preceding the December 27 special election. Ek was therefore not eligible to run for state legislative office in that district at the December 27 special election.

Petition granted.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

ANDERSON, G. BARRY, Justice (concurring).

I join in the majority opinion but write separately because of concerns regarding the appropriate level of deference to the referee's findings. I begin with the observation that this court has original, rather than appellate, jurisdiction in cases challenging the residency of candidates for election to the Minnesota Legislature. See Minn.Stat. § 204B.44 (2004).

As the majority notes, we have previously indicated that we will defer to a referee's findings of fact and credibility determinations in these cases. See Piepho v. Bruns, 652 N.W.2d 40, 44–45 (Minn.2002); Lundquist v. Leonard, 652 N.W.2d 33, 37 (Minn.2002). These decisions, however, relied on prior cases over which we exercised appellate, not original, jurisdiction. See Bell v. Gannaway, 303 Minn. 346, 347–48, 227 N.W.2d 797, 800 (1975) (appeal from district court); Nelson v. O'Neil Amusements, 274 Minn. 555, 555, 142 N.W.2d 647, 647 (1966) (appeal from decision of the Industrial Commission).

We have not discussed in any detail what deference, if any, we should grant to a referee's factual findings in a dispute involving a residency challenge to a candidate seeking election, or reelection, to the Minnesota Legislature. While it seems not unreasonable to defer to the "credibility" findings of the referee, and we have so held in fairly summary fashion, these ac-

---

**7.** We note, in addition, that the LIEP inspector sent Ek a letter dated July 6, 2005, confirming their telephone conversation about the complaint and the requirements for a home occupation. Enclosed with the letter was a document that detailed the same residency requirements for a home occupation that were described on the affidavit form.

tions are unlike any other proceeding considered by this court. Discovery is limited and sometimes impossible to conduct. There are enormous time pressures and media firestorms surrounding these disputes can and do occur. And there are external pressures in residency litigation as well, including the probability that the interested parties in the litigation are not limited to a "voter" challenging a "candidate," and the results of a decision in these cases can be far-reaching.

Given the nature of actions brought under Minn.Stat. § 204B.44, I believe the better approach is that taken by the United States Supreme Court. In cases over which the Court exercises original jurisdiction, the Court can appoint a special master who hears evidence and makes recommendations to the Court. *See Colorado v. New Mexico,* 467 U.S. 310, 313, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984). The Court conducts an "independent review" of the record, however, "because 'the ultimate responsibility for deciding what are correct findings of fact remains with [the Court].'" *United States v. Maine,* 475 U.S. 89, 98, 106 S.Ct. 951, 89 L.Ed.2d 68 (1986) (quoting *Colorado,* 467 U.S. at 317, 104 S.Ct. 2433).

The evidence was overwhelming, and well summarized and analyzed by the referee, that the candidate did not meet the constitutional residency requirement, and thus, because it is not necessary to resolve what deference, if any, to grant the referee's credibility finding, I join the majority opinion. But while, in many cases, we might very well agree with the credibility determination of a referee in residency litigation, I do not believe we should adopt deference as the legal standard to be applied to all such disputes.